IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

Case No.: 8:19-cv-00363-SDM-JSS

**MONIFA GRANT**, individually and on
behalf of others similarly situated,

    Plaintiff,

v.

**REGAL AUTOMOTIVE GROUP, INC.,**

    Defendant.
_____/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR
APPROVAL OF CLASS NOTICE PLAN**

Plaintiff Monifa Grant hereby replies to Defendant Regal Automotive Group, Inc.'s' Response to Plaintiff's Motion for Approval of Class Notice Plan (the "Response"), [DE 161], and states:

Defendant's Response is not a good faith effort to collaborate on a reasonable notice plan. Instead, Defendant uses its Response as a third attempt[1] to relitigate this Court's class certification Order. In support, Defendant relies on the Declaration of Jan Kotsyun—a declaration which, by Defendant's previous admission, "contained no expert opinions." *See* Defendant's Response to Plaintiff's Motion to Strike, [DE 66] at pg. 2. Rather than propose an alternative plan or suggest modifications to allay its concerns, Defendant devotes its entire Response to essentially arguing that no class should have been certified in the first place.

Other courts facing similar circumstances reject these kinds of attempts:

> Defendants do not attempt to show that some other method of notification offers a better means of notifying the class. *See In re*

---

[1] Besides its original opposition to class certification, Defendant has filed a motion for reconsideration of the Court's Order granting class certification. *See* [DE 144].

1

> *Integra Realty Res., Inc.*, 354 F.3d 1246, 1260 (10th Cir. 2004) ("We emphasized that the Integra I appellants had made no showing ... that some better method of notification offered a practicable means of notifying the class."). As noted above, Defendants instead argue that the class is not ascertainable. This is not a reason to deny class notice.

*Lavigne v. First Cmty. Bancshares, Inc.*, 330 F.R.D. 293, 297 (D.N.M. 2019); *Reyes v. BCA Fin. Servs.*, No. 16-24077-CIV-GOODMAN, 2018 U.S. Dist. LEXIS 239629, at *4 (S.D. Fla. Dec. 11, 2018) (*"*In addition, because [defendant] failed to comply with the Court's class-certification order by not negotiating agreed-upon language or providing a separate class notice, the Court will determine the appropriate notice based on [plaintiff's] submission."); *Se. Milk Antitrust Litig. v. Sweetwater Valley Farm, Inc.*, No. 2:08-MD-1000, 2011 U.S. Dist. LEXIS 5590, at *38 (E.D. Tenn. Jan. 19, 2011) ("Although the defendants raise a somewhat general objection to this procedure, notice to class members whose addresses are known by United States mail is the 'best notice practicable,' see *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-77, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974), and defendants have not suggested any alternative method of notice.").

Respectfully, the Court should ignore Defendant's improper arguments and approve Plaintiff's notice plan.

**1. Plaintiff Consulted with Epiq—Which is a Real Company**

First, Defendant's suggestion that Plaintiff failed to demonstrate that Epiq is a "real entity" or "experienced and reputable" lacks merit. *See* Response at pg. 13. Aside from Class Counsel providing the Court with Epiq's robust CV,[2] it is well known that Epiq/Hilsoft[3] "specializes in designing, developing, analyzing and implementing, large-scale legal notification plans." *See* Declaration of Cameron R. Azari at ¶2, attached **Exhibit A**. "Epiq has administered more than

---

[2] *See* Hilsoft CV attached as Exhibit A to Plaintiff's Motion for Approval of Class Notice Plan. [DE 148-1].
[3] Hilsoft is a business unit of Epiq Class Action & Claims Solutions, Inc. *See* Exhibit A at ¶2.

2

4,500 settlements, including some of the largest and most complex cases ever settled, and handled hundreds of millions of notices, disseminated hundreds of millions of emails, handled millions of phone calls, processed tens of millions of claims, and distributed hundreds of billions in payments." *Id*. at ¶5. In short, Epiq's reputation is well-respected among federal courts, including this Court, and class litigators and Defendant's suggestion otherwise should be ignored. *See Cty. of Monmouth v. Fla. Cancer Specialists, P.L.*, No. 2:18-cv-201-FtM-23MRM, 2019 U.S. Dist. LEXIS 110748, at *3 (M.D. Fla. June 5, 2019) (Judge Merryday approving Epiq Class Action & Claims Solutions, Inc. as the settlement administrator); *Schorr v. Countrywide Home Loans, Inc.*, No. 4:07-cv-00019-WLS, 2015 U.S. Dist. LEXIS 194083, at *14 (M.D. Ga. Apr. 1, 2015) ("The Court is satisfied with the parties' selection of this experienced class action administrator and appoints Epiq to notify the settlement class in accordance with this Order and the parties' settlement agreement.").

Second, Defendant's attempt to discredit the proposed notice plan by arguing that it seems likely Class Counsel never actually consulted Epiq merits little discussion. But, in case Class Counsel's signed pleading stating that they consulted with Epiq is not sufficient "evidence", Resp. at pg. 15, Epiq confirms that, "Plaintiff's counsel reached out to Epiq and Hilsoft to discuss the Notice Plan prior to their recent filing. [Epiq is] aware of the proposed Notice Plan being presented to the Court as well as the request for Epiq to be the notice administrator for the Class." *See* Exhibit A at ¶8. Accordingly, contrary to Defendant's claims, Epiq was consulted, and consulted before Class Counsel proposed the notice plan. Defendant's arguments should be summarily rejected and the Court should have no qualms appointing Epiq as the administrator.

**2. The Class Data Can be Relied on to Provide Notice**

The class data here provides Epiq with the tools necessary to effectuate the best notice

practicable under the circumstances. As Plaintiff explained in moving for class certification, Plaintiff is in possession of call logs that identify each class members (1) cellular telephone number, (2) first name, middle initial, and Last name; and (3) address, including zip code. Defendant's suggestion that Class Counsel is not taking steps to verify this data ignores Class Counsel's proposed notice plan, distorts the notice requirements under Rule 23, and incorrectly claims that Plaintiff's information is not contained in the data (it is).

In support of its flawed argument that some of the data might be inaccurate Defendant contends that even "the name of the Plaintiff 'Monifa Grant' appears nowhere in the List Service data." Response at pg. 7. What Defendant ignores is that Plaintiff's *maiden* name, which is a name she commonly uses, is identified in the class data, along with the correct date she received the voicemail, her correct cellular telephone number, and her correct address. *See* Redacted Class Data attached as **Exhibit B** at line 11195 (identifying Monifa Encarnacion as receiving a RVM on October 4, 2017 at the number ending with 6776 and living at 7863 Sugar Pine Blvd). Defendant knows that Plaintiff received the subject RVM and is identified in the class data because at her deposition she testified that she received the RVM, confirmed her phone number, and confirmed that her address is 7863 Sugar Pine Boulevard. *See* Deposition of Plaintiff, available at [DE 173-8], at 4:23-5:2 (identifying Plaintiff's address as 7863 Sugar Pine Blvd); 17:1-14 (testifying that her cellular telephone number is the same listed in Complaint and logs); 33:1-34:9 (confirming receipt of the voicemail). So, contrary to Defendant's assertions, the call log's reliability is further confirmed by the information contained in the logs for Plaintiff.

Defendant also relies on the declaration of Jan Kostyun—which Defendant has previously stated contains no expert opinions— to argue that the data may be unreliable because "only 28 of the 50 telephone numbers included matching criteria between the [List Service data] and

4

TransUnion's output." Resp. at pg. 8.

First, neither the declaration nor Defendant's motion provide any reason why this Court should give weight to Mr. Kostyun's declaration.  There is no indication that Mr. Kostyun has any class notice experience, conducting reverse lookups, or performing data analysis.  The declaration fails to meet any requirements of an expert report or otherwise inform this Court why Mr. Kostyun's opinion would be helpful. It does not identify Mr. Kostyun's relevant experience, education background, experience using third parties to verify contact information for consumers, what materials he was given prior to formulating his declaration, or otherwise provide this Court with any information necessary to determine whether Mr. Kostyun's declaration satisfies Rule 702 or is otherwise probative or credible. See Declaration of Jan Kostyun at DE #161-3; see *Lanard Toys Ltd. v. Toys "R" US-Delaware, Inc.*, No. 3:15-cv-849-J-34PDB, 2019 U.S. Dist. LEXIS 46911, at *18 (M.D. Fla. Mar. 21, 2019) ("In addition to determining the reliability of the proposed testimony, Daubert instructs that Evidence Rule 702 requires the Court to determine whether the evidence or testimony assists the trier of fact in understanding the evidence or determining a fact in issue").  It is unclear why the Court should give any weight to the opinions of Mr. Kotsyun.

Second, even if the Court ignores these fatal deficiencies, the substantive contents of the declaration suffers from additional shortcomings. The declaration relies solely on data from TransUnion, a commercial database, fails to explain (1) whether, like Plaintiff, additional maiden names were found, (2) whether in instances where the first name did not match, did the last name also not match, and vice versa, (3) what TransUnion is or whether it's a reliable source, (4) whether any inconsistencies allegedly identified by TransUnion would be corrected by the verification steps Epiq will take prior to implementing notice (discussed below), (5) or whether a random sampling of 50 names is statistically significant given the class size.

Further, Mr. Kostyun previously testified in a different action, under oath, that "the accuracy of information gathered from public and commercial databases, like LexisNexis, **are unreliable, inaccurate, and error-prone**." *Reyes v. BCA Fin. Servs.*, No. 16-24077-CIV, 2018 U.S. Dist. LEXIS 106449, at *35 (S.D. Fla. June 26, 2018) (quoting Mr. Kostyun's declaration) (emphasis added).  In other words, Mr. Kostyun is on record testifying that the method he is used here to cast doubt on the class data—"reliance on a commercial database"—is "unreliable, inaccurate, and error-prone."  Yet, Mr. Kostyun then uses this unreliable method to argue that the underlying data is unreliable.

Third, even if the class data contains some outdated information, as Plaintiff explained in her Motion, prior to providing notice Epiq will validate the addresses available using the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS").[4]  In addition, the addresses will be certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code,[5] and verified through Delivery Point Validation ("DPV") to verify the accuracy of the addresses.[6]  After this data validation is complete, each class member shall be sent a postcard notice.  In the event a postcard notice is returned as undeliverable, Epiq will re-mail to any new address available through USPS information—for example, to the address provided by the USPS on returned pieces for which the automatic forwarding order has expired—or to better addresses that may be found using a third-party "skip-tracing" lookup

---

[4] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. *See, e.g.,* USPS, NCOALink, available at https://postalpro.usps.com/mailing-and-shipping-services/NCOALink (last visited June 17, 2020).

[5] *See* USPS, CASS, available at https://postalpro.usps.com/certifications/cass (last visited June 17, 2020).

[6] Delivery Point Validation confirms the existence of a specific address and that that address can be delivered to.  *See*, Experian, Delivery Point Validation, available at https://www.edq.com/glossary/dpv-delivery-point-validation/ (last visited June 17, 2020).

service. Finally, as an additional level of protection, Epiq will provide email notice and although the class data does not contain e-mail addresses, Epiq will use a third-party look-up service to acquire any available e-mail addresses for each Class Member. Accordingly, to the extent any addresses, zip codes, or names are inaccurate or outdated Epiq will take steps necessary validate and update if necessary.

Finally, Rule 23(c)(2) does not require perfect notice, it requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Diaz v. Hillsborough Cty. Hosp. Auth.*, CASE NO. 8:90-CV-120-T-25B, 2000 U.S. Dist. LEXIS 14061, at *16 (M.D. Fla. Aug. 7, 2000). It is also "widely recognized that for the due process standard to be met it is not necessary that every class member receive actual notice, so long as class counsel acted reasonably in selecting means likely to inform persons affected." *Allapattah Servs. v. Exxon Corp.*, No. 91-0986-CIV, 2006 U.S. Dist. LEXIS 102277, at *37-38 (S.D. Fla. Apr. 5, 2006). Accordingly, Defendant's untested theory that Class Counsel might have inaccurate data (potentially an address or zip code) for some of the class members, even if true, does not render the proposed notice plan insufficient.

In all, "The Notice Plan will provide for the best notice practicable under the circumstances of this case, conform to all aspects of the Rule 23, and comport with the guidance for effective notice set out in the Manual for Complex Litigation, Fourth." *See* Exhibit A at ¶12.

**3. The Notice Plan is Note "Overinclusive and Underinclusive"**

Relying on an outdated decision from 1977, Defendant argues that "the class notice method proposed here by Grant 'is defective in two aspects' because it is both overinclusive and underinclusive." Resp. at pg. 8 (citing *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1099 (5th Cir. 1977)). Defendant is incorrect.

7

First, as described above, there is no evidence that the list is overinclusive or underinclusive besides Defendant's self-serving conclusions that it is inaccurate.

Second, Defendant ignores more recent Eleventh Circuit decisions that undercut its argument. In *Juris v. Inamed Corp.*, 685 F.3d 1294 (11th Cir. 2012), the Eleventh Circuit examined the level of notice required for Rule 23(b)(3) classes and stated, "Courts have consistently recognized that, even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice. [citing cases]." *Id.* at 1321; see also *Mullins v. Direct Dig., Ltd. Liab. Co.*, 795 F.3d 654, 665 (7th Cir. 2015) (citing *Juris* and stating, "[Rule 23(c)(2)(B)] does not insist on actual notice to all class members in all cases. It recognizes it might be **impossible** to identify some class members for purposes of actual notice.") (emphasis in original); *Kreger v. Medicredit, Inc.*, No. 8:16-cv-1481-T-33JSS, 2016 U.S. Dist. LEXIS 93889, at *6 (M.D. Fla. July 19, 2016) (In TCPA matter, quoting *Juris* and stating "As previously mentioned though, 'due process does not require that class members actually receive notice.'"); *MRI Assocs. of St. Pete v. Dairyland Ins. Co.*, No. 8:11-cv-665-T-30MAP, 2014 U.S. Dist. LEXIS 135, at *9 (M.D. Fla. Jan. 2, 2014) ("Courts have consistently recognized that, even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice.").

Third, *Nissan* does not stand for the proposition that Defendant claims it does. In *Nissan*, the court did not create a blanket rule against "overinclusive and underinclusive" class notice plans. Instead, the court was examining the level of "reasonable effort" required to identify class members for individual notice. The court explained that this was a fact intensive question: "No single formula can be derived which will anticipate the myriad circumstances that may confront class action litigants attempting to identify absentee class members of a 23(b)(3) action and resolve whether the effort required is reasonable. […] Taken together these cases establish the principle

8

that the type of notice to which a member of a class is entitled depends upon the information available to the parties about that person." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d at 1098. The court also noted that "Obviously, the word 'reasonable' cannot be ignored. In every case, reasonableness is a function of anticipated results, costs, and amount involved. A burdensome search through records that may prove not to contain any of the information sought clearly should not be required." *Nissan*, 552 F.2d at 1099.  Contrary to Defendant's assertions, Plaintiff's plan is reasonable given the information available.

### 4. The Plan Does Not Violate Defendant's Due Process Rights

Finally, Defendant is incorrect that Plaintiff's plan violates its due process rights because there is no method for Defendant to challenge class membership. Defendant relies on cases examining whether a class was ascertainable for certification purposes where self-identifying affidavits were used, a factor that is not present here.  In *Karhu*, the Eleventh circuit was discussing issues with self-identification, not a general due process right to challenge class membership: "A plaintiff proposing ascertainment via self-identification, then, must establish how the self-identification method proposed will avoid the potential problems just described." *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 949 (11th Cir. 2015); *Usry v. EquityExperts.org, LLC*, No. CV 116-010, 2019 U.S. Dist. LEXIS 39651, at *14 (S.D. Ga. Mar. 12, 2019) (In Karhu, the Eleventh Circuit concluded that determining membership through self-identification presents a bifurcated problem [one of which was defendants due process rights.]").  The same is true with *In re Chiquita Brands Int'l Inc. Alien Tort Statute & Shareholders Derivative Litig.*, 331 F.R.D. 675 (S.D. Fla. 2019), resp. at pg. 11: "Reliance on a 'self-identifying' affidavit using these parameters, without further indicia of reliability, would deprive Defendants of their ability to challenge class membership and implicate serious due process concerns." *Id.* at 685.  These cases have no

application here, and, to the extent Defendant is concerned about its Due Process rights, it should suggest modifications to the plan.  It's failure to do so demonstrates that Defendant's arguments are simply another attempt to argue class certification through a response to a notice plan.

Dated:  October 2, 2020

Respectfully Submitted,

| **IJH Law** | **HIRALDO P.A.** |
|---|---|
| */s/ Ignacio J. Hiraldo*<br>Ignacio J. Hiraldo, Esq.<br>Florida Bar No. 0056031<br>1200 Brickell Ave Suite 1950<br>Miami, FL 33131<br>Email: ijhiraldo@ijhlaw.com<br>Telephone: 786.496.4469 | Manuel S. Hiraldo<br>Florida Bar No. 030380<br>401 E. Las Olas Boulevard Suite 1400<br>Ft. Lauderdale, Florida 33301<br>Email: mhiraldo@hiraldolaw.com<br>Telephone: 954-400-4713<br>**Trial Counsel** |
| **EDELSBERG LAW, PA**<br>Scott Edelsberg, Esq.<br>Florida Bar No. 0100537<br>scott@edelsberglaw.com<br>19495 Biscayne Blvd #607<br>Aventura, FL 33180<br>Telephone: 305-975-3320 | **EISENBAND LAW, P.A.**<br>Michael Eisenband<br>Florida Bar No. 94235<br>515 E. Las Olas Boulevard, Suite 120<br>Ft. Lauderdale, Florida 33301<br>MEisenband@Eisenbandlaw.com<br>Telephone: 954.533.4092 |

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
(t) (305) 479-2299

**Counsel for Plaintiff and the Class**