IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

Case No.: 8:19-cv-00363-SDM-JSS

MONIFA GRANT, individually and on
behalf of others similarly situated,

    Plaintiff,                                                CLASS ACTION

v.                                                        JURY TRIAL DEMANDED

REGAL AUTOMOTIVE GROUP, INC.,

    Defendant.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DECERTIFY CLASS**

Plaintiff Monifa Grant hereby responds in opposition to Defendant's Motion to Decertify Class (the "Motion"), [DE No 190], and states:

**I.    INTRODUCTION**

Not content to wait for the Court to rule on its previously filed Motion for Reconsideration of Order Certifying Class, [DE 140], Defendant again rehashes its arguments for why the Class in this matter is not ascertainable, despite the fact that there are detailed call logs that demonstrate to whom the ringless voicemails at issue were sent containing specific identifying information for each Class member (herein the "Transmission Reports").[1] In this iteration, Defendant adds an attack on the adequacy of Class Counsel.[2]

---

[1] This is now Defendant's fourth attack on class certification. Defendant previously filed its original opposition to class certification, [DE 60], its motion for reconsideration of the Court's Order granting class certification, [DE 144], and its Response to Plaintiff's Notice Plan, [DEs 160; 161], all of which incorrectly argue why the Class members are not ascertainable.

[2] Like its previous briefings, Defendant uses the opportunity to launch thinly veiled insults on Class Counsel that are unprofessional and have no place in these proceedings.

1

As recently noted by Judge Brewer in a TCPA matter, "to allow a party to escape class certification based on its own allegedly poor record keeping would be to encourage parties to violate the law and then fail to keep an accurate record to avoid detection. Such a result would be unjust." *Morgan v. Adventist Health Sys./Sunbelt, Inc.*, No. 6:18-cv-1342-Orl-78DCI, 2020 U.S. Dist. LEXIS 62300, at *6 (M.D. Fla. Jan. 15, 2020). Here, Defendant asks the Court to allow it to dodge all liability because it failed to keep any records of its TCPA violations and because it outsourced its unlawful conduct to vendors, one of which is in Canada. This is precisely the scenario the FCC warned about in its order relating to vicarious liability for TCPA violations:

> allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. **This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case.**

*In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois, N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C.R. 6574, 6588 (2013) (emphasis added). Respectfully, this Court should not reward Defendant's actions and should deny Defendant's Motion in its entirety.

First, almost all of Defendant's arguments are based on the mistaken conclusion that due to Magistrate Judge Sneed's holding – that she could not rely on the Transmission Reports on summary judgment – Defendant has effectively won this case. Defendant is mistaken, as is shown by another district court's post-bench trial order in a TCPA class action where this issue arose, *Lyngaas v. Curaden AG*, No. 17-10910, 2019 U.S. Dist. LEXIS 201986 (E.D. Mich. Nov. 21, 2019). As discussed in detail below, in *Lyngaas*, the court held during trial that it could not rely on call logs to establish the number of class wide violations for purposes of entering a final

judgment. Despite this, the court found that "although Lyngaas has not offered admissible evidence establishing the exact number of faxes sent class-wide, he has established through circumstantial evidence that two mass fax broadcasts took place at Curaden USA's behest[.]" *Id.* at \*52. The court explained that determining the total number of violations that took place could be accomplished through the post-trial claims process. *Id.* at \*53.

Second, this Court did not commit error by using the Transmission Reports to determine that the Class is ascertainable. That is because, as Defendant's counsel here argued successfully in another matter, "in the context of determining class certification, the evidence rules are relaxed because it is a determination made by the court, not a jury." *Shamblin v. Obama*, No. 8:13-cv-2428-T-33TBM, 2015 U.S. Dist. LEXIS 54849, at \*10 (M.D. Fla. Apr. 27, 2015). Indeed, in a filing signed by Defendant's counsel here, the defendant in that case stated, "Plaintiff accurately states that the evidentiary standards applied at the class certification stage are less stringent than those applied at trial." *Id.* at Defendant's Response to Plaintiff's Motion to Strike, [DE 184], at pg. 8. Numerous courts in the Eleventh Circuit and throughout the country agree.

Third, the Transmission Reports are corroborated by other detailed spreadsheets produced in discovery. As explained in more detail below, non-party vendor BDC produced a spreadsheet of the cellular numbers that it purchased to complete its RVM campaign for Defendant, and which BDC then forwarded to VoiceLogic for the transmission of the ringless voicemails. *Id.* These spreadsheets, like the Transmission Reports, contain identifying information for each Class member.

Finally, Class Counsel are not inadequate, and Defendant's arguments to the contrary should be taken with a "grain of salt". *See Mendez v. Radec Corp.*, 260 F.R.D. 38, 43 (W.D.N.Y. 2009) (citing cases). This is particularly true here given Defendant's actions throughout this matter

3

as outlined in Plaintiff's Motion for Sanctions, [DE 73].

## II. LEGAL STANDARD

When examining whether decertification is warranted under Rule 23(c), "courts consistently hold that 'there must be some development or change in circumstances to merit revisiting a class certification decision.'" *Sos v. State Farm Mut. Auto. Ins. Co.*, No. 6:17-cv-890-Orl-40LRH, 2020 U.S. Dist. LEXIS 127689, at *6 (M.D. Fla. Apr. 8, 2020) (quoting *In re J.P. Morgan Chase Cash Balance Litig.*, 255 F.R.D. 130, 133 (S.D.N.Y. 2009) (collecting cases)). "In the absence of materially changed or clarified circumstances . . . courts should not condone a series of rearguments on the class issues . . . in the guise of motions to reconsider the class ruling." *Id.* (quoting *Washington v. Vogel*, 158 F.R.D. 689, 692-93 (M.D. Fla. 1994) (quoting 2 H. Newberg and A. Conte, *Newberg on Class Actions* (3d ed. 1992) § 7.47 at 7-146))) (quotation marks removed).

## III. ARGUMENT

### a. Plaintiff can Establish Defendant's Class-Wide Liability Without the Transmission Reports.

Almost all of Defendant's arguments are built on Defendant's mistaken premise that because Magistrate Judge Sneed determined the Transmission Reports are hearsay for purposes of Plaintiff's summary judgment motion, Plaintiff will not prevail at trial. *See, e.g., Mot.* at pg. 14 ("This case appears headed for trial without the Plaintiff being able to prove necessary elements of her claims due class counsel's failure to conduct discovery on Voice Logic."). Defendant is incorrect, as was shown in a recent post-trial order in another TCPA class action where this issue arose. *See Lyngaas v. Curaden AG*, No. 17-10910, 2019 U.S. Dist. LEXIS 201986 (E.D. Mich. Nov. 21, 2019). During trial in *Lyngaas,* plaintiff sought to rely on similar call logs to establish the total number of class wide violations:

4

> Summary report logs are documents in spreadsheet format that list, among other information, a job name, a date and time, a fax number, and a result (e.g., sent, busy, connection interrupted, invalid number, no answer). See, e.g., Pl. Trial Ex. 25. Chad Komniey, the owner of AdMax, testified that when a fax broadcast was completed, he would generally receive an e-mail from WestFax summarizing the transmission results. Komniey Dep. at 86-87. Additionally, a full summary report log would be generated, which Komniey would download from the WestFax website. Id. at 85, 87-88. Thus, AdMax did not create the summary report logs but rather obtained them from WestFax.

*Lyngaas*, 2019 U.S. Dist. LEXIS 201986, at *27-28. The defendant in *Lyngaas*, like Defendant here, argued that these logs were hearsay and thus inadmissible. *Id.* The court disagreed with the defendant's hearsay argument, stating, "Lyngaas correctly asserts that because 'statements' made by machines or computers are not considered hearsay, they are not subject to exclusion under Rule 802." *Lyngaas*, 2019 U.S. Dist. LEXIS 201986, at *29. However, even though the call logs were not hearsay, the court determined that plaintiff failed to "surmount the hurdle of authentication" based on the evidence the plaintiff presented. *Id.* at *29, *32-37.

Despite this, even without the call logs, the court was able to determine that the plaintiff had established his individual claim and further established that defendant violated the TCPA on a class wide basis:

> although Lyngaas has not offered admissible evidence establishing the exact number of faxes sent class-wide, he has established through circumstantial evidence that two mass fax broadcasts took place at Curaden USA's behest. […] Although Lyngaas has not established the aggregate number of faxes sent, he has successfully established all other elements necessary to demonstrate Curaden USA's violation of the TCPA. Thus, the only question remaining is how many faxes were sent class-wide. In similar instances where a defendant's statutory violation has been established, courts have afforded plaintiffs the opportunity to establish potential class members' identities through a claims administration process. *See Krakauer v. Dish Network, LLC*, No. 1:14-CV-333, 2017 U.S. Dist. LEXIS 117713, 2017 WL 3206324, at *5 (M.D.N.C. July 27, 2017) ("[T]he trial already established all of the elements necessary to prove a violation . . . . Whether a claimant is a class member is a question that can be more appropriately, fairly, and efficiently resolved through a claims administration process as authorized by Rule 23."); *Six Mexican Workers v. Arizona Citrus Growers*, 641 F. Supp. 259, 260-261 (D. Ariz. 1986) (finding the defendants liable following a bench trial and subsequently authorizing a claims administration process to identify class

5

members).

*Lyngaas*, 2019 U.S. Dist. LEXIS 201986, at *52-54. Here, Plaintiff has requested that the Court reopen discovery for the sole purpose of taking VoiceLogic's deposition to spare the parties and the Court a prolonged post-trial claims process. *See* Plaintiff's Motion for Leave to Take Trial Deposition of VoiceLogic, [DE No. 187].

But, even if the Court denies this request, the court's decision in *Lyngaas* shows that Plaintiff will be able to establish Defendant's class-wide liability at trial even without use of the Transmission Reports. Previously, the Court granted Plaintiff summary judgment on the following issues: (1) a ringless voicemail is a "call" under the TCPA; (2) the messages at issue here are telemarketing under the TCPA; and (3) Defendant did not have the express written consent it needed to send these messages. *See* Order Adopting Report and Recommendation, [DE No. 182], 2-3. The following issues are to be decided at trial: (1) "whether a ringless voicemail 'was sent to a cellular telephone number as part of the telemarketing campaign at issue," [DE No. 182] at pg. 2, and (2) whether Defendant is vicariously liable under a theory of actual agency, subagency, or ratification. *Id.* Plaintiff will be able to testify that she received the message on her cellular phone. Further, other admissible evidence establishes that (1) BDC purchased a list of cellular telephone numbers; (2) BDC sent the list to VoiceLogic; (3) BDC directed VoiceLogic to initiate two telemarketing campaigns to these numbers; (4) VoiceLogic transmitted the messages as directed; and (5) individuals subsequently called Defendant to complain about having received the messages. *See* Plaintiff's Objections to Report and Recommendation, [DE 173], at pgs. 5-6 (summarizing relevant evidence).

Thus, like the plaintiff in *Lyngaas*, Plaintiff here will be able to utilize circumstantial evidence to demonstrate that Defendant violated the TCPA on a class-wide basis.

      **b.  This Court did not Commit "Clear Error" in Determining That the Class**

**is Ascertainable.**

Defendant's erroneous argument can be summarized in one sentence: because Magistrate Judge Sneed concluded that the Transmission Reports are hearsay for summary judgment purposes, this Court committed "clear error" in relying on them to find that the Class was ascertainable for class certification purposes. Mot. at pgs. 2-8.

Assuming, *arguendo*, that the Transmission Reports are hearsay that will be inadmissible at trial, Defendant is wrong in concluding that the Court erred in relying on them for class certification.[3] "That is [because] in the context of determining class certification, the evidence rules are relaxed, and courts may consider evidence that may not ultimately be admissible at trial." *In re Chiquita Brands Int'l Inc. Alien Tort Statute & S'holders Derivative Litig.*, 331 F.R.D. 675, 680 n.8 (S.D. Fla. 2019) (citing *Shamblin*, 2015 U.S. Dist. LEXIS 54849, at *10 ("in the context of determining class certification, the evidence rules are relaxed because it is a determination made by the court, not a jury.") (declining to strike declaration that contained hearsay)); *see also Fisher v. Ciba Specialty Chems. Corp.*, 238 F.R.D. 273, 279 (S.D. Ala. 2006) ("Courts confronted with Rule 23 issues may consider evidence that may not ultimately be admissible at trial.") (citing cases); *City of Rome v. Hotels.com, LP*, No. 4:05-CV-249-HLM, 2011 U.S. Dist. LEXIS 158580, at *21 n.7 (N.D. Ga. Mar. 21, 2011) ("the Court agrees with courts that have concluded the Federal Rules of Evidence should be loosely applied [during class certification].") (collecting cases); *Brantley v. Handi-House Mfg. Co.*, No. CV 617-089, 2018 U.S. Dist. LEXIS 126058, at *1 n.1 (S.D. Ga. July 27, 2018) ("Defendants ask the Court to strike some of the evidence attached to

---

[3] Magistrate Judge Sneed also noted that these records would potentially be admissible under the residual exception to the hearsay rule: "The Court further acknowledges that the call logs could be admissible under the residual exception to the hearsay rule, as codified under Federal Rule of Evidence 807(a). *See, e.g.*, *People for the Ethical Treatment of Animals, Inc. v. Dade City's Wild Things, Inc.*, No. 8:16-CV-2899-T-36AAS, 2020 WL 897988, at *7 (M.D. Fla. Feb. 25, 2020)" Report and Recommendation, [DE 165], at pg. 12,

Plaintiffs' motion to certify on the grounds that it contains inadmissible hearsay. [] Due to the preliminary nature of a motion to certify a class, the Federal Rules of Evidence are not stringently applied.").

Thus, it is immaterial whether the Transmission Reports are hearsay or not, and this Court did not err in relying on the reports to determine that the class is ascertainable. Indeed, the court in *Lyngaas* rejected a similar argument after trial in a separate opinion. Post-trial, the *Lyngaas* defendant objected to plaintiff's use during the claims process of the call logs. *Lyngaas*, 436 F. Supp. 3d at 1025. The court rejected this argument, stating, "The fact that the summary report logs were inadmissible at trial to establish the aggregate number of faxes sent class-wide is immaterial [and defendant] cites no authority requiring that distribution of claim forms and affidavits be made only to individuals identified by reference to admissible evidence." *Lyngaas*, 436 F. Supp. 3d at 1026. What the court in *Lyngaas* did not do was decertify the Class or determine that class counsel there were inadequate based on their inability to admit the call logs as evidence.

Additionally, besides the Transmission Reports, other evidence supports this Court's ruling. Non-party BDC produced the list of cellular telephone numbers, bates labeled BDCSubpoenaSuppResp_0630-0885, which it purchased and was then sent to VoiceLogic. *See* Deposition Transcript of BDC's Corporate Representative Justin Specht, dated June 13, 2019 ("Specht Depo."), [DE 99-3], at 32:5-34:2 (discussing BDCSubpoenaSuppResp_0630); *see also* Redacted Sample of BDCSubpoenaSuppResp_0630, attached as **Exhibit A**.[4] Like the Transmission Reports, this list also contains identifying information for the Class, including first and last name, telephone number, and address. Specht Depo. at 32:23-33:1. And, like the Transmission Reports, Plaintiff's information appears in this list that was sent to VoiceLogic by

---

[4] Plaintiff and Defendant are in possession of unredacted logs.

BDC. Specht Depo. at 33:6-20; Exhibit A, at BDCSubpoenaSuppResp_0709.

Defendant ignores the relevant case law cited above, and following its usual practice, selectively quotes to inapplicable (although purportedly binding) cases to attempt to convince this Court that it must now decertify the class. For example, Defendant cites to a 1988 decision from the Old Fifth Circuit to argue that "The court's reliance on '[u]nreliable hearsay undermine[d] the accuracy of the fact-finding process' and resulted in a finding of fact that was based solely on hearsay and clearly erroneous." Mot. at pg. 10 (quoting *Farrish,* 836 F.2d 969, 978 (5th Cir. 1988)); *see also* Mot. at pg. 1 (quoting same). *Farrish* is wholly inapplicable to the current situation. *Farrish* was not a class action, it was an "appeal from an adverse judgment in a civil rights suit concerning the denial of a Mississippi parolee's constitutional right to confront an adverse witness at a preliminary parole revocation hearing." *Farrish*, 836 F.2d at 970. In discussing the use of hearsay during criminal parole revocation proceedings, the court made the statement which Defendant cites, and determined that, "[t]his case, far from being a borderline one, presents a classic example of when the use of hearsay impermissibly violates a right to confront and cross-examine the declarant." *Farrish*, 836 F.2d at 978 (5th Cir. 1988).

Similarly, Defendant cites *Sikes v. Teleline, Inc.*, to argue that it "would consequently be an abuse of discretion for the court to not decertify the class." Mot. at pg. 7 (*citing Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002)). Like Defendant's reliance on *Farrish,* the *Sikes* case is inapplicable to this situation. The plaintiffs in *Sikes* sought to bring a RICO class action against various defendants. *Sikes*, 281 F.3d at 1355-1358. The court certified a master class for the federal RICO claim. *Id.* at 1358. On appeal, the Eleventh Circuit held that the lower court abused its discretion "in holding that the questions of law or fact common to the members of the proposed class predominate over any questions affecting only individual members and that, therefore, the

9

class would be manageable." *Sikes*, 281 F.3d at 1352.

But, besides the passing mention cited by Defendant, *Sikes* did not examine whether the court made clearly erroneous "findings of fact" by relying on purportedly hearsay documents. Instead, based on the requirements of RICO, the Eleventh Circuit overturned the lower court because it could not "overlook the fact that the district court reached its conclusions on manageability based upon a faulty legal premise." *Sikes*, 281 F.3d at 1359.  The underlying court committed this error when, as to RICO's reliance element, "the court determined that 'reliance may be virtually presumed' in this case. This was error." *Sikes*, 281 F.3d at 1361. The Eleventh further held that "the district court erroneously determined that LMAD and its promotions were 'without material variation.'" *Sikes*, 281 F.3d at 1364.  Thus, *Sikes* does not mandate this Court to decertify the Class like Defendant contends.

Defendant also cites *Vega v. T-Mobile USA, Inc*. Mot. at pgs. 7-8 (*citing Vega v. T-Mobile USA*, 564 F.3d at 1267).  Again, Defendant pulls the one sentence from the case that might support its argument, but which upon reading of the entire case shows is inapplicable here.  In the section cited by Defendant, the Eleventh Circuit examined whether numerosity was met for a Florida only class, and determined the court erred in relying on testimony about the size of the class on a nationwide level to find it was met for the Florida class:

> the district court's inference of numerosity for a Florida-only class without the aid of a shred of Florida-only evidence was an exercise in sheer speculation. Accordingly, the district court abused its discretion by finding the numerosity requirement to be satisfied with respect to a Florida-only class when the record is utterly devoid of any showing that the certified class of T-Mobile sales representatives "in Florida" is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

*Vega*, 564 F.3d at 1267-68.

In sum, Defendant does not cite a single relevant case to support its position, and the ones it does cite do not say Defendant claims they do.

10

      **c. The Class Should not be Decertified Because of Class Counsel's Purported Inadequacy.**

Defendant further argues that the Class should be decertified because of Class Counsel's inadequacy for (1) failing to conduct discovery on VoiceLogic and (2) informing Defendant in a settlement communication that Class Counsel would potentially bring in other counsel to assist with trial. Mot. at pg. 8-17.

> As other courts have observed, objections by defendants to the adequacy of class counsel sometimes need to be taken "with a grain of salt." *Williams v. Balcor Pension Investors*, 150 F.R.D. 109, 119 n. 10 (N.D.Ill. 1993); accord *Sipper v. Capital One Bank*, No. CV 01-9547, 2002 U.S. Dist. LEXIS 3881, 2002 WL 398769, at *4 n.7 (C.D.Cal. Feb. 28, 2002); *Ballan v. Upjohn Co.*, 159 F.R.D. 473, 487 (W.D.Mich. 1994). **If defendants carp about the alleged shortcomings of plaintiffs' counsel, then, it is probably not out of any particular solicitude for the class members themselves**.

*Mendez v. Radec Corp.*, 260 F.R.D. 38, 43 (W.D.N.Y. 2009) (rejecting motion to decertify based on class counsels purported inadequacy) (emphasis supplied).

        **1. Class Counsel are not Inadequate for Their Decision to not Conduct Unnecessary International Discovery.**

Defendant argues that the Class should be decertified because of Class Counsel's "failure to conduct discovery on Voice Logic, apparent lack of understanding of the international limitations of the jurisdiction of this court, lack of understanding of the rule against hearsay, lack of understanding of the operation of the business records exception to the hearsay rule, and indication they would need to hire a fifth attorney to try the case demonstrate they are not adequate to prosecute the case to conclusion." Mot. at pg. 9.

First, Defendant's argument should be taken with an especially large "grain of salt" given its discovery conduct throughout this matter. As a reminder, Defendant began this matter by disavowing any knowledge of the marketing campaign at issue. *See, e.g.*, Defendant's First Response to Plaintiff's First Set of Interrogatories, attached as **Exhibit B** (responding "Defendant

11

does not know." for the majority of its responses)*; see also* Plaintiff's Motion for Sanctions, [DE 73].[5] At the time it served its "Defendant does not know" discovery responses, Defendant's owner and 30(b)(6) witness was engaged in text message communications with a former manager, Ken Hallworth, about the telemarketing at issue in this case. *See id.* at [73-2] (text messages between Defendant's owner and Mr. Hallworth). It was not until November 18, 2019—over nine months after this matter was filed and after significant efforts by Plaintiff—that Defendant sought to amend its Answer to acknowledge that it did in fact hire BDC for this campaign. *See* Defendant's Motion for Leave to Amend Answer, [DE 69].

Although Defendant was under an obligation to produce documents from its vendors related to the campaign, including the Transmission Reports, it did not do so, and almost all of the discovery that Plaintiff has been able to obtain in this matter has come from non-parties. In a recent TCPA matter, *Perrong v. Sperian Energy Corp.,* the court sanctioned a defendant for not producing call logs from its vendors that were subsequently destroyed. No. 2:19-cv-00115-RFB-EJY, 2020 U.S. Dist. LEXIS 199664, at *22 (D. Nev. Oct. 27, 2020). The court rejected defendant's argument that it had no control over these records:

> With respect to the first element of control and duty to preserve, and anticipating EGC's contention that it had "no control" over calling records, the Court finds otherwise. In *CG Technology Development, LLC v. 888 Holdings PLC*, the Nevada District Court stated:
>
> Control need not be actual control; courts construe it broadly as 'the legal right to obtain documents upon demand.'" *F.T.C. v. Johnson*, No. 2:10-CV-02203-MMD, 2013 WL 5408272, at *3 (D. Nev. Sept. 25, 2013) (quoting *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989)). "Control must be firmly placed in reality." *Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d at 1453. If a party in a case can get access to the documents held by a third-party by "request[ing] it" and the third-party not had an issue with producing documents in the past, the documents are in control of the party in the case. *JS Prod., Inc. v. Kabo Tool Co.*, No. 2:11-CV-01856-RCJ, 2013

---

[5] Plaintiff filed an Objection to Magistrate Judge Sneed's Report and Recommendation denying Plaintiff's motion. *See* [DE 175]. This Objection remains outstanding.

      WL 3364450, at *2 (D. Nev. July 3, 2013). Case No. 2:16-cv-00856-RCJ-VCF, 2017 WL 3908673, at *2 (D. Nev. Sept. 6, 2017).

*Perrong,* 2020 U.S. Dist. LEXIS 199664, at *22-23. Here, the discovery Plaintiff has been able to obtain was despite Defendant's efforts to hide it. It is hypocritical of Defendant to now try to take advantage of the situation by asking the Court to decertify the class.

Second, as described above in Section III.a, pgs. 4-7, Plaintiff does not need the Transmission Reports or testimony from VoiceLogic to establish Defendant's class-wide liability. Thus, Defendant's argument that Class Counsel are inadequate is based on its faulty conclusion that it has won this matter – it has not.

Third, Defendant seems to be unaware that there are legal mechanisms that will allow Plaintiff to take VoiceLogic's deposition if leave is granted by this Court, despite VoiceLogic's location in Canada. *See* Mot. at pg. 14 (arguing, "even if the Motion to Re-Open discovery were granted, such an order would not fix the problem."). Congress has authorized this Court "to issue letters rogatory that enable a U.S. litigant to obtain non-party discovery from a foreign entity." *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, No. 2:18-cv-01479-KOB-HNJ, 2019 U.S. Dist. LEXIS 170958, at *12 (N.D. Ala. June 6, 2019) (collecting cases) (granting plaintiff's motion to issue letter rogatory that included request to depose Canadian entity); *see also Brey Corp. v. LQ Mgmt., L.L.C.*, Civil Action No. AW-11-cv-00718-AW, 2012 U.S. Dist. LEXIS 104952, at *12 (D. Md. July 25, 2012) (in TCPA case, granting motion to modify scheduling order and request to issue letter rogatory for deposition of Canadian entity). Further, it is worth noting that Defendant's argument actually cuts against its position: if Plaintiff would never be able to obtain discovery from VoiceLogic, then Class Counsel could not be inadequate for attempting to take discovery that is—in Defendant's view—impossible.

13

Finally, Federal Rule of Civil Procedure 23's counsel requirements does not support Defendant's position. "[C]lass counsel will adequately represent the class if they are 'qualified, experienced, and generally able to conduct the proposed litigation.'" *Jones v. Gov't Emples. Ins. Co.*, No. 6:17-cv-891-Orl-40LRH, 2019 U.S. Dist. LEXIS 58201, at *13 (M.D. Fla. Apr. 4, 2019) (quoting *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985)). In *Griffin*, the Eleventh Circuit rejected a similar argument as to the one Defendant makes here:

> The Postal Service also contends that plaintiffs failed to meet the Fed.R.Civ.P. 23(a) requirement that they fairly and adequately represent the interests of the class. The Postal Service asserts several alleged errors and lack of preparedness by plaintiffs' counsel. The adequate representation requirement involves questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation, and of whether plaintiffs have interest antagonistic to those of the rest of the class. *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1125 (5th Cir. 1969). The district court did not abuse its discretion in determining that plaintiffs satisfied the adequate representation requirement.

*Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985). Similarly, in *Kubiak v. S.W. Cowboy, Inc.*, "Defendants argue[d] that Plaintiffs' counsel' failure to file a timely Motion to certify the class under the local rules 'is per se grounds to find counsel is inadequate to protect the interests of the class,' and that Plaintiff's counsel has committed a 'series of other errors' in this action which establish counsel's 'inadequacy.'" No. 3:12-cv-1306-J-34JRK, 2014 U.S. Dist. LEXIS 80225, at *74 (M.D. Fla. June 12, 2014). The court rejected this argument, stating, "the Court has not been given sufficient reason to doubt class Plaintiffs' counsel's ability to 'fairly and adequately represent the interests of the class.'" *Id.* (*quoting Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008)); *see also Baez v. LTD Fin. Servs., L.P.*, No. 6:15-cv-1043-Orl-40TBS, 2016 U.S. Dist. LEXIS 74788, at *9 (M.D. Fla. June 8, 2016) (rejecting attack on adequacy of class counsel where defendant alleged failures to comply with the Local Rules and purportedly "failed to correct certain misstatements apparently made in the Complaint.").

The court in *Farms v. Calcot, Ltd.* rejected a similar attempt to decertify the class because of class counsel's purported inadequacy:

> The Court finds that class counsel's explanation and decision not to pursue unidentified claims against Calcot's board of directors to be part of a considered legal strategy. Defendants have failed to establish that class counsel's work to identify or investigate potential claims in this action has been inadequate. "The fact that counsel have not tried to press claims against [the defendant] which they believe (and justifiably so) are unsuitable for class treatment does not make them inadequate." *Sullivan v. Chase Inv. Services of Boston, Inc.*, 79 F.R.D. 246, 258 (C.D. Cal. 1978). Accordingly, this Court finds class counsel to be adequate under the Fed. R. Civ. P. 23(g)(1)(A) considerations.

No. CV-F-07-0464 LJO DLB, 2010 U.S. Dist. LEXIS 93548, at *15 (E.D. Cal. Aug. 23, 2010).

Defendant cites to a single "somewhat similar case" that it believes supports its requested relief. Mot. at pg. 13 (citing *Beer v. XTO Energy, Inc.*, No. CIV-07-798-L, 2010 U.S. Dist. LEXIS 70172 (W.D. Okla. July 13, 2010)). In *Beer*, the court decertified the class after significant issues with class counsel, including (1) filing summary judgment only as to the individual claim, (2) attempting to file without leave a second motion for summary judgment for class damages without filing summary judgment for class liability, (3) failing to protect the interest of a Kansas subclass even after this was pointed out by the court, (4) "woefully inadequate" briefing during summary judgment because the briefing contained no analysis of Kansas law and contained misrepresentation of Kansas law in plaintiffs' reply, (5) withdrawing and then attempting to revive a whole claim, (6) failing to court rules and repeated fallacies in briefing. *See Beer v. XTO Energy, Inc.*, No. CIV-07-798-L, 2010 U.S. Dist. LEXIS 36200, at *6-12 (W.D. Okla. Apr. 13, 2010).[6]

---

[6] The court's reasoning for decertification was announced in this April 13, 2010 opinion. The July 13, 2020 opinion cited by Defendant summarizes the previous opinion and allowed the class representative and class counsel to be replaced. *Beer v. XTO Energy, Inc*., No. CIV-07-798-L, 2010 U.S. Dist. LEXIS 70172, at *22 (W.D. Okla. July 13, 2010) ("The court finds that the 'efficient conduct of the proceedings' mandates that Intervenors be substituted as class plaintiffs and Intervenors' counsel be substituted as class counsel.").

15

Respectfully, Class Counsel's conduct in this matter bears no comparison to that of class counsel in *Beer*. Indeed, despite Defendant's less than forthcoming discovery cooperation, Plaintiff has been able to obtain class certification and summary judgment on a large portion of the Class members' claims. Further, Class Counsel have not missed a single deadline imposed by this Court, have pursued this case with vigor, have devoted significant resources to this matter, and have more than adequately protected the interests of the Class.

### 2. Bringing in Additional Resources for Trial Does not Make Class Counsel Inadequate.

Defendant further seeks decertification based on a settlement e-mail where Class Counsel indicated that they would be retaining additional counsel for purposes of trial. [DE 190-1].[7] From this single sentence, Defendant concludes that "class counsel has admitted they are not prepared to try the case and instead would need to 'bring on trial counsel.'" Mot. at pg. 15. Defendant is wrong.

First, bringing on additional counsel to this matter would not somehow make Class Counsel inadequate; in reality, it shows that Class Counsel are willing to devote even more of their resources to successful prosecution of this matter. To be clear, Class Counsel are ready and willing to see this matter until its end, including going to trial and any subsequent appeals.

---

[7] Defendant's use of a settlement communication, one that was clearly labeled as such, to attempt to decertify the class is not within the spirit of Federal Rule of Evidence 408. See *United States ex rel. Raven*, No. 1:11-CV-00994-CAP, 2020 U.S. Dist. LEXIS 143380, at *13 (N.D. Ga. June 10, 2020) ("[']The purpose of this rule is to encourage settlements which would be discouraged if such evidence were admissible.' The Eleventh Circuit has stressed this philosophical impetus.") (citing *Westchester Specialty Ins. Servs., Inc. v. U.S. Fire Ins. Co.*, 119 F.3d 1505, 1512 (11th Cir. 1997) ("The purpose of the rule is to encourage parties to settle their disputes."); *Lampliter Dinner Theater, Inc. v. Liberty Mut. Ins. Co.*, 792 F.2d 1036, 1042 (11th Cir. 1986) ("Well established case law and the Federal Rules of Evidence prohibit the introduction of settlements or settlement negotiations into evidence to prove liability."); *Ramada Dev. Co. v. Rauch*, 644 F.2d 1097, 1106 (5th Cir. 1981) ("This rule is designed to encourage settlements by fostering free and full discussion of the issues.")).

16

Second, Defendant is mistaken that bringing on additional counsel would require another motion for class certification, which it argues would be in violation of the Court's Scheduling Order and Local Rules. The court in *Baez*, in rejecting a similar argument by the defendant after the class was certified, stated:

> Defendant appeals from the Magistrate Judge's February 27, 2017 decision granting Plaintiff's motion to permit co-counsel to appear in this Court *pro hac vice*. Defendant contends that the Magistrate Judge erred in granting the motion because Defendant believes allowing another attorney to appear for the benefit of the plaintiff and the class sidesteps the requirements of Federal Rule of Civil Procedure 23(g) and undermines this Court's prior finding that current class counsel can adequately represent the interests of the class. **Defendant is incorrect. There is no requirement that every attorney who appears on behalf of a plaintiff in a class action lawsuit be certified as class counsel or meet Rule 23(g)'s adequacy requirements.** *See* **Fed. R. Civ. P. 23(g)(2). Moreover, the Court sees no connection between Mr. Lietz's appearance in this case and the adequacy of current class counsel.** The Magistrate Judge reached the correct decision and will therefore be affirmed.

*Baez v. Ltd. Fin. Servs., L.P.*, No. 6:15-cv-1043-Orl-40TBS, 2017 U.S. Dist. LEXIS 53589, at *6-7 (M.D. Fla. Apr. 7, 2017).[8]

Despite this, Defendant cites to several inapplicable cases to attempt to convince this Court otherwise. Defendant cites *Bell v. Brockett*, 922 F.3d 502, 511 (4th Cir. 2019) for its argument that Plaintiff would have to move for a second class certification to bring on additional counsel. Mot. at pg. 16. But, unsurprisingly, *Bell* does not stand for this rule. Instead, in *Bell*, a rare "defendant class action", the Fourth Circuit held it was error to not appoint class counsel at all when the court granted class certification. *See Bell v. Brockett*, 922 F.3d 502, 504 (4th Cir. 2019) (stating, "members of the defendant class argue that the district court erred in certifying the class without simultaneously appointing counsel for the class[.]"). Defendant also cites to *Washington v. Vogel*, 158 F.R.D. 689, 691 (M.D. Fla. 1994) to support its argument. However, *Washington* did not deal with an attempt to add additional attorneys

---

[8] Defendant's counsel here was also defendant's counsel in *Baez*, so counsel is aware that his arguments lack merit

after a class was certified. Instead, the plaintiffs in *Washington* sought to file a second motion for class certification based on Rule 23(b)(3) after having filed, and lost, a motion for class certification solely under Rule 23(b)(2). *Washington v. Vogel,* 158 F.R.D. 689, 691 (M.D. Fla. 1994) ("In this motion, the Plaintiffs for the first time seek class certification pursuant to Rule 23(b)(3).").

### IV. CONCLUSION

Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety.

Dated: November 16, 2020

Respectfully Submitted,

| | |
|---|---|
| */s/ Ignacio J. Hiraldo* <br> IJH Law <br> Ignacio J. Hiraldo, Esq. <br> Florida Bar No. 0056031 <br> 1200 Brickell Ave Suite 1950 <br> Miami, FL 33131 <br> Email: ijhiraldo@ijhlaw.com <br> Telephone: 786.496.4469 <br> Counsel for Plaintiff and the Class | HIRALDO P.A. <br> Manuel S. Hiraldo <br> Florida Bar No. 030380 <br> 401 E. Las Olas Boulevard Suite 1400 <br> Ft. Lauderdale, Florida 33301 <br> Email: mhiraldo@hiraldolaw.com <br> Telephone: 954-400-4713 <br> Counsel for Plaintiff and the Class <br> Trail Counsel |
| EDELSBERG LAW, PA <br> Scott Edelsberg, Esq. <br> Florida Bar No. 0100537 <br> scott@edelsberglaw.com <br> 19495 Biscayne Blvd #607 <br> Aventura, FL 33180 <br> Telephone: 305-975-3320 <br> Counsel for Plaintiff and the Class | EISENBAND LAW, P.A. <br> Michael Eisenband <br> Florida Bar No. 94235 <br> 515 E. Las Olas Boulevard, Suite 120 <br> Ft. Lauderdale, Florida 33301 <br> MEisenband@Eisenbandlaw.com <br> Telephone: 954.533.4092 <br> Counsel for Plaintiff and the Class |
| SHAMIS & GENTILE, P.A. <br> Andrew J. Shamis <br> Florida Bar No. 101754 <br> ashamis@shamisgentile.com <br> 14 NE 1st Avenue, Suite 400 <br> Miami, Florida 33132 <br> (t) (305) 479-2299 <br> (f) (786) 623-0915 <br> Counsel for Plaintiff and the Class | |