UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MONIFA GRANT,

    Plaintiff,

v.                                               CASE NO. 8:19-cv-363-SDM-JSS

REGAL AUTOMOTIVE GROUP, INC.,

    Defendant.
_____/

**ORDER**

After the deposition of a records custodian in Canada, Regal Automotive Group, Inc., renews both the motion (Doc. 258) to de-certify the class and the motion (Doc. 259) to require the plaintiff to submit a detailed plan "providing a reasonable and manageable process for determining each class member's standing." The plaintiff responds (Docs. 261, 262, 266) in opposition to each motion. Earlier orders (Docs. 140, 165, 182) explain in detail the facts and allegations of this action.

In 2017, Regal, a car dealership, retained BDC Productions to promote a sales event by transmitting to cellular telephones a "ringless voicemail," that is, "a pre-recorded message that is deposited into someone's telephone voicemail without ringing their phone." (Docs. 99-4 at 1; 266-1 at 13) To identify cellular telephone subscribers likely within the vicinity of Regal's dealership, BDC purchased from a vendor 15,691 telephone numbers. (Doc. 60-1 ¶ 8) Although each telephone number is associated with a name and address, the vendor derived the information from "publicly

available sources" and "undertook no effort to determine whether any of the telephone numbers provided actually belonged" to the associated name and address. (Doc. 60-1 ¶ 9)  After purchasing the telephone numbers from the vendor, BDC recorded a commercial announcement and retained VoiceLogic to transmit the message as a "ringless voicemail" to 12,150 of the telephone numbers from the vendor. (Doc. 266-1 at 22)  After the voicemail campaign, VoiceLogic generated for BDC a report, which includes a summary of the campaign and which includes the total number of cellular telephones to which VoiceLogic's software reportedly delivered the ringless voicemail.  Also, a log appended to the campaign report marks 5,997 ringless voicemails as delivered and marks 6,153 ringless voicemails as undelivered.

A May 27, 2020 order (Doc. 140) certifies a class comprising the "5,997[] persons within the United States who, on October 4, 2017, [or] October 5, 2017, or both, were delivered" the promotional voicemail recorded by BDC.[1]  An order (Doc. 182) grants summary judgment on, among other things, the plaintiff's claim that the ringless voicemails constitute "telemarketing" for which Regal failed to obtain "prior express written consent" under 47 C.F.R. § 62.100(a).  However, because the summary judgment order revealed doubt about whether class counsel's affidavit could authenticate the campaign report, Grant received leave to depose a representative of VoiceLogic.  Armed with the results of the VoiceLogic deposition and other material, Regal — in accord with a September 16, 2021 order — renews both the

---

[1] The class definition in the May 27, 2020 order contains a typographical error and states that the class comprises "5,9972" persons instead of 5,997 persons.

- 2 -

motion to decertify the class and the motion to require Grant to describe the process for identifying each class member's standing.

Relying on *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019), and *Grigorian v. FCA US LLC*, 838 Fed. Appx. 390 (11th Cir. 2020), Regal argues that the receipt of a single, unsolicited, ringless pre-recorded voicemail cannot confer standing on a class member. In the alternative, Regal argues that even if the receipt of a single pre-recorded voicemail confers standing, the recipient must identify some harm in addition to the mere receipt of the voicemail. Regal argues that confirming this additional harm will require an assessment of each class member and render the class administratively infeasible and thus unmanageable. Grant responds that the receipt of a single pre-recorded voicemail confers standing under Article III.

Under Section 2 of Article III of the United States Constitution, the "judicial power" extends to "cases" and "controversies." To constitute a case or controversy, the plaintiff must demonstrate "standing." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (Alito, J.) ("The doctrine [of standing] developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood."). The "irreducible constitutional minimum of standing" comprises (1) an "injury-in-fact," (2) a "causal connection" between the plaintiff's injury and the defendant's conduct, and (3) a likelihood that a favorable decision can redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (Scalia, J.).

An "injury-in-fact" requires "an invasion of a legally protected interest" that is "concrete and particularized" and that is "actual or imminent, not conjectural or

hypothetical." *Lujan*, 504 U.S. at 560. A concrete injury must "be '*de facto*'; that is, it must actually exist." *Spokeo*, 578 U.S. at 340 (citing BLACK'S LAW DICTIONARY 479 (9th ed. 2009)). Although a concrete injury is "real" and not "abstract," that is, an actual in-fact injury and not merely the idea or concept of an injury, an "intangible harm" can constitute a concrete injury arising from *Lujan* (this awkward and confusing equivalence and juxtaposition of "intangible" and "concrete" evidences that "concrete" was not quite the right word deployed in quite the right place). *Spokeo*, 578 U.S. at 340–41. But, according to *Spokeo*, an intangible harm constitutes a concrete injury only if the intangible harm "has a close relationship to a harm" cognizable "traditionally" at common law or if the "judgment" of Congress "elevat[es] to the status of legally cognizable" an injury "previously inadequate in law." *Spokeo*, 578 U.S. at 341 (quoting *Lujan*, 504 U.S. at 578). However, the injury-in-fact requirement is "not automatically satisf[ied] . . . whenever a statute grants a right and purports to authorize a suit to vindicate it." *Spokeo*, 504 at 341. To satisfy the minimum requirement of Article III standing, even an intangible injury identified by Congress must have some analogue to a harm historically recognized at common law. For instance, a "bare procedural violation [of a statute], divorced from any concrete harm," cannot establish an injury-in-fact under Article III. *Spokeo*, 504 at 341 (reasoning that a credit report containing inaccurate marital and employment information causes no concrete injury absent disclosure to, and reliance by, a third party).

1.     Standing decisions under the TCPA

In *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015) (Eaton, J.), the defendant argued that the receipt of a one-page unsolicited fax promoting dental services resulted in no injury-in-fact.[2] However, because the transmission of the fax "occupied" and rendered "unavailable" for one minute the plaintiff's telephone line and fax machine, *Palm Beach* found that the unsolicited fax subjected the plaintiff to the harm that Congress intended to eliminate by enacting the TCPA. *Palm Beach*, 781 F.3d at 1252. Specifically, *Palm Beach* reviews House Report No. 102-317, which found an unsolicited fax "problematic" because the fax "occupies the recipient's fa[x] machine so that it is unavailable for legitimate business messages while processing and printing the junk fax." In other words, because the transmission of the fax results in the harm that Congress recognized in enacting the TCPA's junk fax ban, the transmission of a junk fax constitutes a concrete injury even if the recipient neither wastes time reading the fax nor wastes resources printing the fax. *Palm Beach*, 781 F.3d at 1252–53. Further, *Palm Beach* finds the TCPA claim analogous to (and in fact states a claim for) conversion under Florida law because the transmission of the fax caused the recipient's fax machine to waste paper and ink. *Palm Beach*, 781 F.3d at 1259 (finding no "*de minimis*" exception to conversion under Florida law).

---

[2] Although *Palm Beach* precedes *Spokeo*, *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019), confirms that *Palm Beach* remains consistent with *Spokeo*.

In *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019) (Branch, J.), the defendant argued that the transmission of a single, brief text message promoting discounted legal services caused no injury-in-fact because the recipient spent only a few seconds reviewing and deleting the text. Although recognizing that a concrete injury "need only be an 'identifiable trifle'" (another unfortunate and confusing phrase), *Salcedo* finds that neither the judgment of Congress nor an analogue to a common law tort supports recognizing the receipt of a single, unsolicited text message as a concrete injury. *Salcedo*, 936 F.3d at 1167 (quoting *United States v. Students Challenging Regul. Agency Procs. (SCRAP)*, 412 U.S. 669 (1973)).

Studying the legislative record, *Salcedo* finds no statement by Congress about the harm of unsolicited text messaging. *Salcedo*, 936 F.3d at 1169. Although text messaging was non-existent when Congress enacted the TCPA in 1991 and although the FCC by regulation has since expanded the TCPA to encompass text messaging, *Salcedo* correctly reads *Spokeo* to require consideration of Congress's contemporaneous judgment — not consideration of an agency's judgment and not speculation about how Congress might judge the harm attending a new technology. *Salcedo*, 936 at F.3d at 1170. Unguided by a congressional statement about the harm of an unsolicited text message, *Salcedo* reviews generally the congressional findings underlying the TCPA and confirms that the TCPA principally endeavors to eliminate "'intrusive invasion[s] of privacy into the home." However, *Salcedo* finds (1) that "by nature of their portability and their ability to be silenced, cell phones may involve less of an intrusion than calls to a home phone" and (2) that "a single unwelcome text message

- 6 -

will not always involve an intrusion into the privacy of the home in the same way that a voice call to a residential line necessarily does." *Salcedo*, 936 F.3d at 1170 (quoting Pub. L. No. 102-243, § 2, ¶ 5). Accordingly, *Salcedo* reasons that Congress "provides little support" for concluding that the receipt of a single unsolicited text constitutes a concrete injury. *Salcedo*, 936 F.3d at 1170.

Studying the common law, *Salcedo* considers whether the receipt of an unsolicited text message bears a "close relationship" to the torts of intrusion on seclusion, conversion, and trespass to chattel.[3] Intrusion on seclusion requires a "substantial" and "strongly object[ionable]" invasion into the "solicitude or seclusion" of a person's private affairs. *Salcedo*, 936 F.3d at 1171 (citing RESTATEMENT (SECOND) OF TORTS § 652B). Although the Restatement recognizes that persistent telephone calls can intrude on a person's seclusion, *Salcedo* observes that a single unsolicited text message lacks — by definition — the "degree" of persistence to transform a single solicitation into a harassing and an injurious-in-fact intrusion. *Salcedo*, 936 F.3d at 1171. And although the Restatement recognizes that intrusion on seclusion includes intrusions such as eavesdropping, wiretapping, and rummaging through personal documents, *Salcedo* observes that sending an unsolicited text message, which transmits no private information to the sender of the text, lacks the invasive quality required for intrusion on seclusion. *Salcedo*, 936 F.3d at 1171 ("Salcedo's reasoning

---

[3] Also, *Salcedo* compares the receipt of an unsolicited text message to the torts of trespass and private nuisance but dismisses the comparison because an unsolicited text invades no interest in real property. *Salcedo*, 936 F.3d at 1171.

would [invalidly] equate opening your private mail . . . with mailing you a postcard.") Accordingly, *Salcedo* concludes that the harm attending the receipt of a single unsolicited text message remains distinct from the harm traditionally actionable as an intrusion on seclusion.

Similarly, trespass to chattel requires a deprivation "of the use of the chattel for a substantial time." *Salcedo*, 936 F.3d at 1172 (citing RESTATEMENT (SECOND) OF TORTS § 217(b)). But a single text message momentarily occupies the recipient's device. *Salcedo*, 936 F.3d at 1171. Thus, the receipt of a single text message "differ[s] so significantly in degree as to undermine" the analogy between the receipt of a single text message and the trespass to a chattel. *Salcedo*, 936 F.3d at 1172. Rather, *Salcedo* finds the receipt of a single unsolicited text message the "kind of fleeting infraction" that "tort law has resisted addressing." *Salcedo*, 936 F.3d at 1172. *Salcedo* reasons that the receipt of a single unsolicited text message lacks a "close relationship" to a harm traditionally recognized at common law.

Conversion requires a "serious interference" with another's right to a chattel. *Salcedo* reasons that a single unsolicited text message results in "nowhere near" the type of "complete and permanent dominion" necessary for conversion. *Salcedo*, 936 F.3d at 1171 (citing RESTATEMENT (SECOND) OF TORTS § 222A).

Although *Salcedo* repeats four times that a single unsolicited text message fails in "degree" to constitute a concrete injury under *Lujan* and contends that the waste of only "a few seconds" cannot constitute a concrete injury under *Lujan*, *Salcedo* asserts that the analysis of concreteness is "qualitative, not quantitative" and that the

- 8 -

receipt of a single text message "is not the kind of harm that constitutes an injury in fact." *Salcedo*, 936 F.3d at 1171–1173.

*Salcedo* directly implies that the mere receipt of one text message cannot subject the recipient to a concrete injury and that a text cannot by arriving in the recipient's device subject the recipient to a concrete injury. But *Salcedo* implies that the cumulative effect of receiving a series of unsolicited texts approximates the harms traditionally actionable at common law and confers Article III standing. *Salcedo* concludes that "[t]he chirp, buzz, or blink of a cell phone receiving a single text message is more akin to walking down a busy sidewalk and having a flyer briefly waived in one's face. Annoying, perhaps, but not a basis for invoking the jurisdiction of the federal courts." *Salcedo*, 936 F.3d at 1172.

2. Application to ringless voicemails

In the non-precedential *Grigorian v. FCA US LLC*, 838 Fed. Appx. 390 (11th Cir. 2020) (per curiam), a car dealership argued that a single ringless voicemail promoting a sales event inflicts no concrete injury. Analogizing a ringless voicemail to the text message in *Salcedo*, *Grigorian* reasons that the receipt of one ringless voicemail inflicts no concrete injury absent a showing "that the single prerecorded voicemail rendered her phone unavailable to receive legitimate calls or messages for any period of time." *Grigorian*, 838 Fed. Appx. at 394. Although recognizing that

the loss of personal time and the unavailability of the device each can constitute a concrete injury, *Grigorian* states:

> In its analysis, *Salcedo* treated loss of time separate from the unavailability of the device. See *id*. at 1168. However, *Salcedo* relied on *Palm Beach Golf Center*, which considered the loss of time and unavailability as one and the same. *See Palm Beach Golf Center*, 781 F.3d at 1250–52 (holding that plaintiff lost one available minute to receive legitimate faxes while an unwanted fax occupied the machine).
>
> Here, Grigorian has provided facts that she lost personal time listening to the voicemail. She has not, however, provided facts to show that the single prerecorded voicemail rendered her phone unavailable to receive legitimate calls or messages for any period of time. Without more, we cannot say that she met her burden to show she had standing, particularly in light of this Court's holdings in *Palm Beach Golf Center* and *Salcedo*.

*Grigorian*, 838 Fed. Appx. 394.

*Grigorian* persuades — and district courts within the Eleventh Circuit unanimously concur[4] — that the triviality attending the receipt of a single, unsolicited, ringless voicemail closely resembles *Salcedo*'s "fleeting infraction" attending the receipt of a single, unsolicited text message. Like a single text message, a single ringless voicemail consumes only an instant to identify the nature of the message and delete the message. And unlike the ringing of a telephone, which demands the recipient's immediate attention, a ringless voicemail produces no ringing and thus no

---

[4] *See, e.g.*, *Barnes v. Allsup Emp. Servs., LLC*, 2022 WL 2390715 (S.D. Fla. July 1, 2022) (Bloom, J.) (denying class certification predicated on the receipt of a single ringless voicemail); *Garcia v. FCA US LLC*, 2021 WL 7709961 (S.D. Fla. May 28, 2021) (Martinez, J.) (dismissing complaint predicated on the receipt of a single ringless voicemail); *Toney v. Advantage Chrysler-Dodge-Jeep, Inc.*, 2021 WL 4896949 (M.D. Fla. July 27, 2021) (Kidd, M.J.) (recommending denial of class certification predicated on the receipt of a single ringless voicemail), adopted, 2021 WL 3910135 (M.D. Fla. Sept. 1, 2021) (Berger, J.); *Harris v. Travel Resorts of Am., Inc.*, 2021 WL 8156010 (S.D. Fla. Mar. 31, 2021) (Cannon, J.) (remanding for lack of subject matter jurisdiction a complaint predicated on the receipt of a single ringless voicemail).

comparable claim on the recipient's attention. Finally, nothing in the record suggests that the ringless voicemails interfere — even momentarily — with the continuous operation of the device or the ability to receive other messages. For these reasons, the receipt of a single ringless voicemail, like the receipt of a single text message in *Salcedo*, bears no "close relationship" to a harm traditionally cognizable at common law and inflicts no concrete injury.

## CONCLUSION

The defendant's motion requests that the plaintiff establish a plan to establish each class member's standing but demonstrates that the receipt of a single, unsolicited, ringless voicemail fails to confer standing under Article III. As the plaintiff correctly notes, "[i]f this Court agrees with the premise of Defendant's motion — that something more than receipt of the pre[-]recorded message is required to establish Article III standing — the proper outcome is not a plan to determine Class member standing" but a dismissal of the action without prejudice. (Doc. 261 at 4) Because this order concurs with "the premise of Defendant's motion," the plaintiff's invitation of dismissal is accepted. Accordingly, this action is **DISMISSED** for lack of standing under Article III, the class is **DE-CERTIFIED**,[5] and the order (Doc. 182)

---

[5] To proceed as a class, the class representative and each class member must have suffered an injury-in-fact. *Drazen v. GoDaddy.com, LLC*, 41 F.4th 1354 (11th Cir. 2022).

granting-in-part summary judgment is **VACATED**.  The clerk must terminate the pending motions and close the case.

ORDERED in Tampa, Florida, on October 17, 2022.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE